IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIAMOND BLADE WAREHOUSE, INC., an Illinois Corporation, | ) ) ) No. 04 C 6444 |
| Plaintiff, | ) ) |
| v. | ) Honorable Charles R. Norgle ) |
| PARAMOUNT DIAMOND TOOLS, INC., a Florida Corporation and PAUL MARINO, | ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Charles R. Norgle, District Judge

The court has previously granted, without comment, Plaintiff Diamond Blade Warehouse, Inc.'s Renewed Verified Motion for Preliminary Injunction and Plaintiff's Renewed Verified Motion for Judgment on the Pleadings. See Minute Order of January 31, 2006. In that January 31, 2006 Minute Order, the court indicated that a full Opinion would issue at a later date. After considering supporting papers submitted by Plaintiff, the court issues the following Opinion.

## I. INTRODUCTION

### A. Facts

Plaintiff Diamond Blade Warehouse, Inc. ("Diamond Blade") and Defendants Paramount Diamond Tools, Inc. ("Paramount") and Paul Marino ("Marino") are competitors in the diamond-tipped saw blade industry. Diamond tipped saw blades are used in the construction and related industries. A significant portion of Diamond Blade's sales and distribution business is derived from a group of customers with whom Diamond Blade has enjoyed continuous, loyal,

1

and long standing relationships.

In 1991, Diamond Blade hired Marino as a sales representative in Diamond Blade's Deerfield Beach, Florida office. Diamond Blade employed Marino as a sales representative between 1991 and 2004. In late December of 2001, Diamond Blade and Marino entered into negotiations for a new employment contract. On January 1, 2002, Diamond Blade and Marino entered into a twelve-year employment agreement which included, *inter alia*, two restrictive covenants. These covenants provided that (1) Marino would not compete with Diamond Blade, or hire or do business with Diamond Blade's employees for a period of two years following the termination of his employment with Diamond Blade, and (2) Marino would not solicit Diamond Blade's customers for a period of two years following the termination of his employment with Diamond Blade. In addition, Marino agreed not to disclose any of Diamond Blade's confidential information, including customer lists. Marino accepted a sum of $250,000 in exchange for these covenants. The employment agreement further provided that these restrictive covenants are independent of any other agreements therein, and that injunctive relief is available to Diamond Blade to enforce these covenants.

In July 2004, Marino's employment at Diamond Blade was terminated for "cause" pursuant to paragraph 13(a)(i) of the employment agreement. Diamond Blade alleges that Marino had misappropriated and embezzled millions of dollars worth of diamond-tipped saw blades, other products, and funds from Diamond Blade. Immediately after departing from Diamond Blade, Marino began working in all operational aspects of Paramount, including the selling and distribution of diamond-tipped saw blades. Marino has solicited orders directly from Diamond Blade's customers, and has also sought to employ individuals who were employed at

Diamond Blade at the time of Marino's departure from Diamond Blade.

## B. Procedural History

On October 6, 2004, Diamond Blade filed suit in the Northern District of Illinois, seeking, *inter alia*, injunctive relief and monetary damages against Defendants. On November 14, 2005, Diamond Blade filed its Renewed Motions for Judgment on the Pleadings and Preliminary Injunction. Defendants did not respond to these Motions. The court granted these Motions on January 31, 2006, and indicated that a full Opinion would follow.

## II. DISCUSSION

### A. Judgment on the Pleadings

#### *1. Standard of Decision*

The court reviews a motion for a judgment on the pleadings "using the standard applicable to dismissals under [FRCP] 12(b)(6) for failure to state a claim on which relief can be granted." Guise v. BMW Mortg., LLC, 377 F.3d 795, 798 (7th Cir. 2004). "Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer." N. Ind. Gun & Outdoors Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). In considering a 12(c) motion, the court "accept[s] the facts alleged in the complaint in the light most favorable to the . . . non-moving party." Guise, 377 F.3d at 798. The court will grant Diamond Blade's Motion only if "it appears beyond a doubt that [Defendants] cannot prove any facts to support a claim for relief and [Diamond Blade] demonstrates that there are no material issues of fact to be resolved." Brunt v. SEIU, 284 F.3d 715, 718-19 (7th Cir. 2002).

The court notes that its docket reveals no Response to this Motion by Defendants. The fact that Defendants have not responded to this Motion, however, does not in and of itself give

the court license to grant the Motion. See Bolt v. Loy, 227 F.3d 854, 856 (7th Cir. 2000); Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993). The court must look to the merits of this Motion. See LaSalle Bank v. Seguban, 54 F.3d 387, 392 (7th Cir. 1995).

### *2. Diamond Blade's Motion for Judgment on the Pleadings*

Diamond Blade asserts that the court should enter judgment on the pleadings in favor of Diamond Blade because all of the elements of Diamond Blade's five claims for relief have been satisfied by the admissions contained in Defendants' Verified Answers. The court agrees as to all but Count III.

In Count I of Plaintiff's Verified Complaint, Diamond Blade alleges that Marino has breached the employment contract's restrictive covenants. The court must first determine whether the pleadings show that an enforceable employment covenant existed. "The basic test applied by Illinois courts in determining the enforceability of restrictive covenants is whether the terms of the agreement are reasonable and necessary to protect a legitimate business interest of the employer." Outsource Int'l, Inc. v. Barton & Barton Staffing Solutions, 192 F.3d 662, 666 (7th Cir. 1999). Before determining the reasonableness of the covenant, however, the court must inquire into whether "the restrictive covenant is ancillary to the valid contract and subordinate to the contract's main purpose; second, we must determine whether there is adequate consideration to support the restrictive covenant." Lawrence & Allen v. Cambridge Human Resource Group, 685 N.E.2d 434, 440 (Ill. App. Ct. 1997). Here, the employment agreement provided that the restrictive covenants were independent of all other agreements of the parties. The restrictive covenants are supported by adequate consideration: $250,000 and a promise of continued employment for twelve years. The covenants are reasonable in that they protect legitimate

4

business interests of Diamond Blade's: the loyalty of its customers, and the unique design configurations of its products. Finally, Marino admits in his Verified Answer that he breached these covenants by working for Paramount, and soliciting Diamond Blade's customers and employees. The court therefore determines that judgment on the pleadings is appropriate for Plaintiff as to Count I of the Verified Complaint.

In Count II of the Verified Complaint, Plaintiff alleges a breach of fiduciary duty. Under Illinois law a cause of action for breach of fiduciary duty "must allege that (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) such breach proximately caused the injury of which the plaintiff complains." Cwikla v. Sheir, 801 N.E.2d 1103, 1111 (Ill. App. Ct. 2003); Prime Leasing, Inc. v. Kendig, 773 N.E.2d 84, 96 (Ill. App. Ct. 2002). Here, Marino was a highly paid employee of Diamond Blade's, he had access to Diamond Blade's confidential information such as customer lists, and he had the authority to sell and distribute diamond-tipped saw blades, and place orders, for Diamond Blade. Marino was therefore a fiduciary of Diamond Blade's. Marino breached this duty by soliciting Diamond Blade's customers and employees, and these actions have proximately caused harm to Diamond Blade. The court therefore determines that judgment on the pleadings is appropriate for Plaintiff as to Count II of the Verified Complaint.

In Count III of the Verified Complaint, Plaintiff alleges conversion of funds Marino accepted in return for his promise to abide by the restrictive covenants. "Conversion is the unauthorized deprivation of property from the person entitled to its possession." Sandy Creek Condominium Ass'n v. Stolt & Egner, 642 N.E.2d 171, 174 (Ill. App. Ct. 1994). A specific sum of money may be the subject of conversion. Id. In order to sustain a cause of action for

conversion in Illinois, the plaintiff must show "(1) the unauthorized and wrongful assumption of control, dominion, or ownership by defendant over the personal property of another; (2) the plaintiff's right to the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property." Id. In this case, the court is not convinced that Defendants' admissions fully establish a cause of action for conversion. While Marino admits that he accepted the funds, and that he has not repaid that sum to Diamond Blade, Marino does not admit that he wrongfully assumed control over these funds. In fact, Diamond Blade admits that it paid Marino these funds pursuant to the valid employment contract both parties signed on January 1, 2002. The court therefore determines that judgment on the pleadings is not appropriate for Plaintiff as to Count III of the Verified Complaint.

In Counts IV and V of the Verified Complaint, Plaintiff alleges tortious interference with contractual relations and tortious interference with prospective economic advantage. Under Illinois law, the elements of tortious interference with contractual relations are: (1) a valid contract, (2) defendant's awareness of the contract, (3) defendant's intentional inducement of breach of the contract, (4) subsequent breach of the contract, and (5) damages. Burrell v. City of Mattoon, 378 F.3d 642, 651 (7th Cir. 2004). Here, Defendants admit that Paramount has knowingly interfered with the restrictive covenant between Diamond Blade and Marino, and that Defendants have recruited Diamond Blade's customers and employees, to Diamond Blade's detriment. Under Illinois law, the elements of tortious interference with a prospective economic advantage are: (1) plaintiff's reasonable expectation of entering into a business relationship, (2) defendant's knowledge of this expectation, (3) defendant's purposeful interference with this expectation, and (5) damages. Id. at 652. Here, Defendants admit that they deliberately

interfered with Diamond Blade's reasonable expectation of entering into and continuing its business relationships with current and prospective customers. The court therefore determines that judgment on the pleadings is appropriate as to Counts IV and V of the Verified Complaint.

## B. Injunctive Relief

### 1. *Standard of Decision*

The standard for a preliminary injunction is as follows: (1) the party seeking the injunction has a reasonable likelihood of success on the merits, (2) there is no adequate remedy at law, (3) irreparable harm will occur without the injunction, (4) the harm that will occur to the moving party if no injunction issues outweighs the harm the injunction will cause to the nonmoving party, and (5) the injunction will not harm the public interest. Platinum Home Mortg. Corp. v. Platinum Fin. Group, 149 F.3d 722, 726 (7th Cir. 1998); Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386 (7th Cir. 1984). "The standard for a permanent injunction is essentially the same as for a preliminary injunction, except that in seeking a permanent injunction, the [plaintiff] must prove actual success on the merits rather than the likelihood of success on the merits." Hicks v. Peters, 10 F. Supp. 2d 1003, 1004 (N.D. Ill. 1998). The court notes that in prevailing on its Motion for Judgment on the Pleadings, Diamond Blade has proven actual success on the merits.

### 2. *Diamond Blade's Motion for Injunctive Relief*

Diamond Blade seeks an injunction requiring Defendants to, *inter alia*, refrain from participating in the diamond-tipped saw business for two years, contacting Diamond Blade's employees or customers for two years, and divulging Diamond Blade's trade secrets. Diamond Blade also seeks an injunction requiring Defendants to turn over any of Diamond Blade's

property Defendants have in their possession.

As the court has indicated, Diamond Blade has proven actual success on the merits. It has demonstrated that there is no adequate remedy at law, and that it will suffer irreparable harm without an injunction: should Defendants be allowed to continue to pilfer Diamond Blade's customers and employees, Diamond Blade will lose goodwill, competitive position, and continuity of business relationships with its customers and employees. Such harm is oftentimes fatal to businesses, and cannot be readily calculated and cured by an award of monetary damages. The harm that Diamond Blade would suffer should no injunction issue outweighs the harm to Defendants should the injunction issue. There is no indication that this injunction would harm the public interest. The court therefore determines that injunctive relief in favor of Diamond Blade is appropriate in this case.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motions for Judgment on the Pleadings and Preliminary Injunction are granted.

IT IS SO ORDERED.

Enter: *[signature]*

CHARLES RONALD NORGLE, District Judge

Dated: February 24, 2006